**Hugh B. GAGE, Plaintiff,**

v.

**The CITY OF WILMINGTON, a Municipal corporation of the State of Delaware, Defendant.**

Supreme Court of Delaware.

May 15, 1972.

John G. Mulford, of Theisen, Lank & Kelleher, Wilmington, for plaintiff.

Daniel M. Kristol, Asst. City Sol., Wilmington, for defendant.

Before CAREY and HERRMANN, JJ., and STIFTEL, President Judge.

HERRMANN, Justice:

This certification arises from an action seeking a declaratory judgment that Wilmington Ordinance 71–050, providing for

the sale and issuance of certain municipal bonds, is unlawful.

## I.

The Ordinance, enacted by the Mayor and Council of Wilmington on July 9, 1971, authorizes the issuance of negotiable municipal bonds, in the maximum aggregate principal amount of $1 million, "to finance the cost of the acquisition and reconstruction of vacant, unsafe and unsanitary housing units in the City and the acquisition of vacant lots for the same purposes."

The Ordinance contains the following recitations:

"WHEREAS, There presently exists in The City of Wilmington a shortage of safe and sanitary housing at a cost which persons and families of low and moderate income can afford; and

"WHEREAS, There are also many vacant lots and dwelling units in the City which are in a state of disrepair and constitute substandard unsanitary and unsafe conditions, the continued existence of which constitutes a danger to the health and safety of the inhabitants of The City of Wilmington; and

"WHEREAS, the City Council has determined it to be necessary and desirable to reconstruct said vacant dwelling units and to construct new units on the vacant lots for the purpose of making such units available to persons and families of low and moderate income at prices at which such persons and families can afford and by doing so, the City will eliminate unsafe and unsanitary dwelling units and vacant lots thereby relieving the inhabitants of the City of the danger to their health and safety."

The Ordinance also recites that the bonds "shall be issued pursuant to and in accordance with the provisions of Chapter 175 of Volume 52 of the Laws of Delaware."

The plaintiff, a Wilmington property owner and taxable, contends that 52 Del. Laws, Ch. 175 does not grant to the City the authority to issue bonds for the purposes set forth in the Ordinance; that, therefore, sale and issuance of the bonds would be illegal.

The question, certified by the Chancery Court and accepted by this Court, is "whether the proposed sale and issuance of the Bonds by the City of Wilmington under the provisions of the Ordinance and the laws of the State of Delaware would constitute an illegal pledging of the full faith and credit of the City, and an illegal basis for an annual levy and collection of ad valorem taxes upon the taxable property of the City, including that of the plaintiff."

## II.

52 Del.Laws, Ch. 175,[1] enacted in 1959, provides that the Mayor and Council of

---

1. 52 Del.Laws, Ch. 175 provides in pertinent part:

"Section 1. The Mayor and Council of Wilmington (hereinafter referred to as 'City') shall have power to issue, from time to time, bonds of the City to finance the cost of any object or purpose for which it has lawful authority to raise or appropriate or expend money and which is not a current expense of the City and which has a period of usefulness of at least five years. Such objects or purposes shall include, but not be limited to, the acquisition, construction, reconstruction, improvement, extension, enlargement and equipment of water supply systems, sewage disposal systems, electric systems, school buildings, fire houses, police stations, libraries, museums, auditoriums, hospitals and all other buildings suitable for the use of the City, highways, streets, curbs, sidewalks, gutters, bridges, boulevards, parks, playgrounds, recreation centers, incinerators, wharfs, docks, harbors, sea walls, storm sewers, culverts and drains, the acquisition of fire fighting and other equipment or mobile property, furnishings, machinery and apparatus.
* * *

"Section 2. The powers conferred by this act shall be in addition to and not in lieu of or substitution for the powers conferred by any other law. * * *."

Wilmington "shall have power to issue, from time to time, bonds of the City to finance the cost of any object or purpose for which it has lawful authority to raise or appropriate or expend money", having "a period of usefulness of at least five years"; that "such objects or purposes shall include, but not be limited to" certain purposes therein enumerated; and that the powers conferred thereby "shall be in addition to and not in lieu of or substitution for the powers conferred by any other law."

■ We hold that the purpose of the Ordinance, as legislatively declared therein, is "any object or purpose for which it [the City] has lawful authority to raise or appropriate or expend money." Such legislative declarations are entitled to due weight. Wilmington Parking Authority v. Ranken, Del.Supr., 34 Del.Ch. 439, 105 A.2d 614 (1954).

■ The authority to rectify "unsanitary and unsafe conditions, the continued existence of which constitutes a danger to the health and safety of the inhabitants of the City of Wilmington", and to raise, appropriate, and expend money therefor, unquestionably falls within the ordinary police powers and duties of municipal government. The conversion of such unsanitary and unsafe conditions, in the process of the rectification, into safe and sanitary housing available for sale or rental to persons of low and moderate income at prices they can afford, is a proper municipal function within the police power, for the implementation of which the City may lawfully raise, appropriate, and expend money. It is beyond question, now, that the police power chargeable with the protection and preservation of the public health, safety, morals, and welfare of a municipality includes the rehabilitation of blighted areas and the provision of proper housing for residents of low and moderate income. See Randolph v. Wilmington Housing Authority, Del.Supr., 37 Del.Ch. 202, 139 A.2d

476 (1958); 6 McQuillen, Municipal Corporations (3d Ed.), §§ 24.44 and 24.563.

Broad police powers were granted to the City by the General Assembly under the Home Rule Statute (22 Del.C. Ch. 8), including "all powers which, under the Constitution of this State, it would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute." 22 Del.C. § 802. By Charter provision (Sec. 1–101), enacted under the Home Rule Statute, Wilmington has "complete powers of legislation and administration in relation to its municipal functions" which are not denied by State statute.

Insofar as this case is concerned, the General Assembly has not denied or retracted any of the broad police power thus granted to the City via Home Rule Charter. The plaintiff's efforts to find such denials or retractions are fruitless:

■ (1) The plaintiff points to the enumeration of objects and purposes in 52 Del.Laws, Ch. 175. By invoking the maxims *ejusdem generis* and *expressio unius est exclusio alterium*, the plaintiff contends that the absence of rehabilitation of housing from the enumeration must lead to the conclusion that the object and purpose of the Ordinance is not one authorized by the Statute. We find this argument without merit. The listing in the Statute does not purport to be exclusive; the list is expressly exemplary, prefaced as it is by the introduction that the approved objects or purposes "shall include" but are "not limited to" the examples listed. As we have held, the object and purpose of Ordinance 71–050 fall clearly within the general terms of the Statute, i. e., the power to issue bonds for any object or purpose for which the City has lawful authority to expend money and which has a period of usefulness of at least five years. Having met those requirements of 52 Del.Laws, Ch. 175, the Ordinance does not fail simply because its modern governmental objective

does not appear as an example in the 1959 Statute.

In view of the foregoing conclusion, Mayor and Council of Wilmington v. Smentkowski, Del.Supr., 198 A.2d 685 (1964), holding that a blanket grant of power in a municipal charter may not give validity to an ordinance which is in contravention of statute, is inapposite.

(2) The plaintiff contends that the General Assembly has withheld from the City the function the City seeks to fulfill under 52 Del.Laws, Ch. 175 and Ordinance 71–050; that such function was assigned by the General Assembly to the Wilmington Housing Authority (created under 31 Del.C. Ch. 43) and its arm, the Slum Clearance and Redevelopment Authority (created under 31 Del.C. Ch. 45); and that the City of Wilmington was granted the power to issue bonds for the work of those Authorities by 50 Del.Laws, Ch. 501.[2] The plaintiff concludes that 50 Del.Laws, Ch. 501, the specific, prevails over 52 Del. Laws, Ch. 175, the general; that, therefore, the City may not find in the latter the authority for an Ordinance having the objectives and purposes of Ordinance 71–050.

Initially, the argument is attractive; but it is overcome by the fact that the authority to issue bonds under 50 Del.Laws, Ch. 501 was limited to the powers and functions of the Wilmington Housing Authority under 31 Del.C. Ch. 45, the Slum Clearance and Redevelopment Authority Law. That Law empowered the Authorities to clear "slum and blighted areas" and to redevelop such areas by "redevelopment projects", in conjunction with the Housing Authority's power to create "low rent housing and slum clearance projects" under 31 Del.C. Ch. 43. Neither of the Authorities was specifically and exclusively authorized by the General Assembly to conserve existing dwelling units by rehabilitating individual properties that had become vacant, unsafe, and unsanitary. The latter is the specific and exclusive function and purpose carved out for Ordinance 71–050 by the Mayor and Council of Wilmington in order to fill a void they see in the total housing picture of Wilmington. Since the plaintiff has been unable to point to any agency or mechanism established by the State to deal exclusively and specifically with the conservation and rehabilitation of individual vacant houses in the City, and since our research discloses none, the conclusion follows that the latter area of endeavor remains within the power and function of the City under its Home Rule police powers and the implementing authority of 52 Del.Laws, Ch. 175.

If a make-weight argument were needed for the latter conclusion, it may be found in the catch-all provision of 52 Del.Laws, Ch. 175, Section 2: "The powers conferred by this act shall be in addition to and not in lieu of or substitution for the powers conferred by any other law. * * *."

* * *

Accordingly, we hold, in response to the question certified, that the proposed sale and issuance of bonds under the provisions of Ordinance 71–050 and the laws of the State of Delaware will not constitute an illegal pledging of the full faith and credit of the City of Wilmington, or an illegal basis for an annual levy and collection of ad valorem taxes upon the taxable property of the City of Wilmington.

---

2. 50 Del.Laws, Ch. 501 (enacted in 1955) empowered the Mayor and Council of Wilmington to issue bonds in a sum not exceeding $1 million "for the purpose of aiding Wilmington Housing Authority as the Slum Clearance and Redevelopment Authority * * * in carrying out any of its powers and functions under 31 Del.C. c. 45 * * *."